IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW JONES** : | |
| : | |
| v. : | CIVIL ACTION NO. 20-3052 |
| : | |
| **ALLSTATE PROPERTY AND** : | |
| **CASUALTY INSURANCE CO.** | |

**McHugh, J.**                                                                                                **August 4, 2021**

## MEMORANDUM

This diversity case concerns interpretation of an exclusion in a homeowner's policy for damage to the insured property caused by "faulty workmanship." On the record before me, there is no material dispute that the damages giving rise to the claim were caused by inept contractors, rendering the exclusion applicable. I am therefore compelled to grant summary judgment in favor of Defendant Allstate Insurance.

### I.      Factual Background

Plaintiff owns a home insured by Allstate under a Homeowner's policy. *See* Allstate Policy, Def. Mot. Summary J. Ex. K at 7, ECF 20-11. Plaintiff hired a contractor, PaveWise Paving and Masonry ("PaveWise"), to repair cracks in his driveway and seal the cracks with commercial grade oil base sealer. *See* PaveWise Contract, Def. Mot. Summary J. Ex. B, ECF 20-2. During the work, the spray sealer applicator allegedly broke, and sealant sprayed the surfaces of Plaintiff's home, fence, garage, and hardscaping. *See* Compl. ¶ 7; Photographs of Property, Def. Mot. Summary J. Ex. C, ECF 20-3. PaveWise attempted to clean the spray, but their attempts seemingly made the stains worse and caused smudging on Plaintiff's property. *See* Dep. Matthew Jones, Def. Mot. Summary J. Ex. E at 5, ECF 20-5.

Plaintiff then hired a second company, Ugly Shingles, to clean the property. *See* Dep. Daniel Ryan, Def. Mot. Summary J. Ex. G at 16, ECF 20-7. Ugly Shingles applied its standard cleaners, which ultimately proved unsuccessful. *Id.* at 29. The owner of Ugly Shingles, Daniel Ryan, testified that the inability to remove the stains resulted from PaveWise's earlier attempt to clean the stain, because it had apparently used gasoline, and "all they did was smear it everywhere, which made it that much worse." *Id.* at 16.

Plaintiff sought coverage for the losses from Defendant Allstate under the policy, retaining Apple Public Adjusters to represent him. *See* Apple Public Adjusters Opinion, Pl.'s Resp. Opp'n Def.'s Mot. Summary J., Ex. 1 at 26, ECF 21. As relevant here, the policy covers "sudden and accidental direct physical loss[es] to the property . . . except as limited or excluded in the policy." Allstate Policy at 7.

One such exclusion applies when the damage to the property was caused by faulty workmanship:

> **We do not cover loss** to the property . . . **consisting of or caused by** the following:
>
> 10. Planning, Construction or Maintenance, meaning **faulty, inadequate or defective**:
>
>     a) planning, zoning, development, surveying, siting;
>     b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>     c) materials used in repair, construction, renovation or remodeling; or
>     d) maintenance
>
> of property whether on or off the residence premises by any person or organization.

*Id.* at 16. [1]

---

[1] Other sections of the policy, describing the scope of coverage, are discussed by the parties but are not relevant here because, as discussed below, I find that the property was covered by those sections, but since the exclusion applies, the scope of coverage is moot.

An Allstate adjuster inspected the property to assess the damage and issued a letter to Plaintiff denying coverage. *See* Initial Allstate Letter Denying Coverage, Def. Mot. Summary J. Ex. J, ECF 20-10. In that letter, Allstate informed Plaintiff that coverage was denied because the policy covers only sudden and accidental direct physical loss to property. *Id*. Allstate also cited a policy exclusion which includes a list of more than eighteen different types of exclusions, "faulty workmanship" among them. *Id*. Plaintiff sent three letters seeking clarification and asking Allstate to identify the particular exclusion on which they were relying. *See* Allstate and Jones Correspondence, Pl. Resp. Ex. 3 at 42, 46, 48, ECF 21. Twice, Allstate responded by repeating their original position and citing the same lengthy exclusion language. *Id*. at 43, 47. On November 22, 2019, Allstate finally responded in a sensible way and identified "defective construction and workmanship" as the applicable exclusion, adding that "the exclusion . . . also includes a number of other terms, which we rely upon." *Id.* at 49.

Defendant now moves for summary judgment, arguing that the property is not a "structure" covered by the policy, that the property did not sustain any direct physical losses such that coverage applies, and in any event, that the faulty workmanship exclusion bars coverage.

## II. Legal Standard

This Motion is governed by the well-established standard for summary judgment in Fed. R. Civ. P. 56(a), as set forth in *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment will be granted when "the movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Wiest v. Tyco Electronics Corp*, 812 F.3d 319, 328 (3d Cir. 2016) (internal citations omitted).

### III.    Discussion

#### A. Interpreting Insurance Contracts in Pennsylvania

Pennsylvania law governs here, as "the state where the policy of insurance was contracted and delivered." *McMillan v. State Mut. Ins. Co.*, 922 F.2d 1073, 1074-75 (3d Cir. 1990) (citing *Faron v. Penn Mutual Life Ins. Co.*, 176 F.2d 290, 292 (3rd Cir.1949)). "[T]he task of interpreting a contract is generally performed by a court, rather than by a jury." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004) (quoting *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). When interpreting insurance policies, the court must ascertain the parties' intentions as manifested by the written terms in the policy. *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). Courts must consider the insurance contract in its entirety rather than considering individual terms. *Id*. at 172. When the policy language is clear and unambiguous, a court must give effect to that language. *Id*. If, however, policy language is ambiguous, the contract must be construed in favor of the insured and against the insurer. *Id*. Contract language is ambiguous if it is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986) (citations omitted).

The insured must, in the first instance, establish that his claims fall within the coverage of the insurance policy. *See State Farm Fire & Cas. Co. v. Est. of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). An insurer seeking to bar coverage under an exclusion then bears the burden of establishing that the exclusion applies as an affirmative defense. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

### B. Applicability of the Policy

Defendant argues that Plaintiff has not met his burden to show that insurance coverage was applicable in the first place, relying on two arguments: that the driveway and fence are not structures, and therefore not covered property; and that the damage caused by the sealant was not a direct physical loss, and therefore not covered damage. Neither of these arguments is persuasive.

Allstate is correct that the policy only covers damage to "structures." Allstate Policy at 7. It then summarily asserts that a structure must "rise from the ground and necessitate support below ground," but cites no authority for this definition either in the policy or in case law. *See* Def. Memo Summary J. at 12, ECF 20-13. This case does not involve a dirt or gravel driveway. A hardened surface combining various materials was previously *constructed* at the property giving rise to a need for repairs. And it is difficult to conceive how a fence could be categorized as anything other than some type of structure. Allstate's proposed definition is therefore both artificial and overly restrictive. As Plaintiff notes, such a definition would arguably conflict with Allstate's own website, which describes an in-ground pool as a structure that would be covered by the policy. *See* Pl.'s Resp. at 7; Allstate Website, Pl. Resp. Ex. 4, ECF 21.

Allstate's second argument is also unpersuasive. Allstate argues that physical loss must "leave the property unusable." *See* Def.'s Mem. Summary J. at 14. Significantly, "physical loss" is not defined in the policy. Judges in this district have held that policies, like this one, that insure against "direct physical loss" cover tangible damage and do not require the property to be "uninhabitable." *Bragg-Taylor v. Neighborhood Spirit Prop. & Cas. Co.*, No. 12-7219, 2013 WL 12149711, at *2 (E.D. Pa. Oct. 29, 2013) (Diamond, J.); *see also TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708-09 (E.D. Va. 2010) (rejecting insurer's similar definition of physical loss and noting that such a definition in that policy, as here, would make other provisions of the policy

meaningless). Not surprisingly, reference to a thesaurus shows that "loss" is a synonym for "damage," "injury," and "harm." *See* Roget's Thesaurus, http://www.roget.org/scripts/qq.php. The line of cases upon which Defendant relies, addressing whether business losses sustained from the COVID-19 pandemic constitute physical damage, has no relevance here. At the very least, the meaning of "physical loss" is ambiguous. And, as noted above, when the language of an insurance policy is ambiguous, it must be construed in favor of the insured. *See 401 Fourth St, Inc*, 879 A.2d at 171. I will therefore not grant summary judgment to Defendant on these bases.[2]

### C. The Faulty Workmanship Exception

Although I reject Allstate's contention that the policy provides no coverage for this type of loss, for the reasons that follow, on the undisputed facts of this case, I conclude that the faulty workmanship exclusion applies as a matter of law.

The exclusion applies when losses to the covered property are caused by "faulty, inadequate or defective" "workmanship" or "repair." Allstate Policy at 16. Courts have found that similar "faulty workmanship" exclusions are unambiguous. *See L.F. Driscoll Co. v. Am. Prot. Ins. Co.*, 930 F. Supp. 184, 187 (E.D. Pa. 1996), *aff'd*, 114 F.3d 1172 (3d Cir. 1997) (citing *Ryan Homes, Inc. v. Home Indem. Co.*, 647 A.2d 939, 941 (Pa. Super. Ct. 1994)). The term can be interpreted according to its "plain, ordinary meaning," under which "'faulty or defective workmanship' is 'the faulty or defective execution of making or doing something.'" *Id*. (citation omitted). "A job that is defectively executed is one that is performed negligently." *Id.* The "very essence of 'workmanship'" includes "the quality and manner in which a service is completed."

---

[2] Defendant itself does not seem to take these arguments very seriously, as they were never cited in the numerous pieces of correspondence with Plaintiff when denying the claim and were likewise omitted from Defendant's answer to the Complaint.

*Diloreto v. CNA Ins. Co.*, No. 98-3488, 2000 WL 45994, at *4 (E.D. Pa. Jan. 21, 2000) (citing American Heritage Dictionary 929 (3d ed. 1994)).

Here, Plaintiff hired a company to seal cracks in the driveway. By any measure, leaving adjacent structures and areas permanently stained with the sealant constitutes "faulty" or "defective" "workmanship," "repair," and "renovation." Such terms would apply equally to PaveWise's ineffectual attempts to eradicate the stains.

### D.  Plaintiff's Alternative Construction of the Policy

Plaintiff makes two primary arguments as to why the faulty workmanship exclusion should not apply, one legal and one factual. Neither is persuasive.

**i.  Damage to "other property"**

Plaintiff argues that because the damage was not to the driveway — the property being worked on — but rather to other property like the fence and hardscaping, the faulty workmanship exclusion does not apply. In support of this argument, Plaintiff looks to a line of cases discussing the coverage afforded by commercial general liability ("CGL") policies. In most CGL policies, there must be an "accident," giving rise to an occurrence that would trigger coverage. In some instances, business owners holding such policies have filed claims for damages arising out of construction or repair of their premises — risks that such policies were not designed to cover. This led to a series of cases culminating in *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 908 A.2d 888, 897 (Pa. 2006). There, the Pennsylvania Supreme Court held that CGL policies exist to protect businesses against "fortuitous" events such as accidents, and that extending them to construction defects on the premises of the policyholder would wrongfully "convert a policy for insurance into a performance bond." 908 A.2d at 899.

Plaintiff relies upon a post- *Kvaerner* case from the Pennsylvania Superior Court, *Indalex Inc. v. Nat'l Union Fire Ins. Co.*, 83 A.3d 418, 419 (Pa. Super. Ct. 2013), in support of his position that the location of the damage is determinative in this instance.  There, workers had properly installed windows and doors that were alleged to be defectively designed and were causing property damage because of water leakage.  A group of homeowners filed suit against the window manufacturer, which in turn sued its insurance carrier seeking coverage.  The manufacturer's policy excluded coverage for faulty installation of its products.  Upon review of the underlying tort complaint, the Superior Court found a duty to defend, observing that "we have an off-the-shelf product that failed and allegedly caused property damage and personal injury" such that "there are issues framed in terms of a bad product, which can be construed as an 'active malfunction' and not merely bad workmanship." *Indalex Inc.*, 83 A.3d at 424.  In its discussion, the court stated that the claim was covered because the "accident" that occurred was to "persons or property other than the insured's product." *Id.* at 425.  Plaintiff seizes upon that language here as authority for the distinction he seeks to draw between the driveway and adjacent areas.

Simply stated, *Indalex* has no applicability here.  It addresses an entirely different form of coverage, structured in a different way.  Irrespective of the language it used as part of its discussion, *Indalex* reached the somewhat obvious conclusion that when a manufacturer has purchased a CGL policy, and consumers assert a defect in the manufacturer's product causing damage to the *consumers'* property, at a minimum the carrier has a duty to defend.  It sheds no light on this case, involving a homeowner's policy where Allstate has agreed to insure against a variety of risks, but explicitly excluded the risk of damage caused by faulty workmanship.[3]

---

[3] Applying that same reasoning, the other case relied upon by Plaintiff ais likewise inapplicable. *See Pennsylvania Manuf. Indemnity Co. v. Pottstown Indus. Complex LP*, 215 A.3d 1010 (Pa. Super. Ct. 2019).

### ii.     Product Malfunction

Next, Plaintiff argues that the damage is not the result of faulty workmanship, but rather the result of an active product malfunction.  Specifically, he contends that the sealant nozzle malfunctioned when it began spraying, and it is this malfunction, not the workmanship of the PaveWise employees, that caused the damage in question.  Plaintiff buttresses this argument with a conclusory report from his public adjuster, contending that the overspray was the result of a "sudden and accidental break of the nozzle" in the sprayer used to apply the sealant.  *See* Pl. Resp. Ex. 1.  The factual basis for this conclusion is not set forth in the report or otherwise apparent anywhere in the record.[4]  Plaintiff then returns to *Indalex*, contending that it supports the proposition that "an active product malfunction which causes damage to property other than the property on which the work being done does not constitute faulty workmanship."  Pl. Resp. at 12.

The objective and undisputed evidence of record refutes Plaintiff's sudden equipment failure theory.  Plaintiff and Defendant have both submitted photographs of the site.  *See* Def.'s Mot. Summary J. Ex. H, ECF 20-8; Pl. Resp. Ex. 2, ECF 21.  The overspray is not confined to a limited area, as would be the case with an unexpected equipment malfunction.  The photographs show overspray over the entire length of the driveway, including the siding, foundation, fence, retaining wall, and driveway pavers, as well as the garage door at the top of the driveway. Even assuming that at some point during the job the sprayer malfunctioned in some way, PaveWise's actions still constitute faulty workmanship because the photos establish that PaveWise necessarily continued to apply the sealant even though it was spraying beyond the driveway.

---

[4] In fact, the only reference to any defect in the sprayer appears to stem from a conversation Plaintiff's public adjuster had with Plaintiff, who reported what he was told by PaveWise employees, who reported a pebble obstructing the device. *See* Dep. Patrick O'Donnell, Def. Mot. for Summary J. Ex. D at 7, ECF 20-4 ("They think there was a pebble caught in the line in the nozzle was their explanation to [Plaintiff].").

9

Plaintiff himself testified in his deposition that PaveWise continued to seal the driveway even after the over spraying was obvious, stating that he noticed the overspray "halfway through" the job. *See* Dep. Jones at 22; *see also id.* (testifying that the sealant "was meant to be applied to a one-foot area . . . . But it was spraying . . . laterally all over the place."). PaveWise's continued use of the nozzle for the rest of the job, causing sealant to spray far from the "one-foot area" it was intended to reach certainly represents faulty workmanship. *See Nationwide Mut. Ins. Co. v. CPB Intern., Inc.*, 562 F.3d 591, 596 (3d. Cir. 2009) ("[T]he workmanship involved here is a failure to perform quality control as to the product to be delivered."); *Diloreto*, 2000 WL 45994, at *4 ("[T]he quality and manner in which a service is completed embodies the very essence of 'workmanship.'").

Finally, even if continuing to use the sprayer did not itself constitute faulty workmanship, Defendant has offered uncontradicted evidence that the ineffectual cleaning of the stains by PaveWise rendered the stains permanent. It is undisputed that PaveWise made two attempts to clean the stains, and according to Plaintiff, made the situation worse: "the day they applied the sealer, they tried for about four hours to get it cleaned, which just basically made it worse. They came back the next day with a different cleaner. Again, made it worse." Dep. Jones at 12-13. It is also undisputed that the stains remain – forming the basis for this claim. Plaintiff himself then hired a cleaning specialist to try to remediate the situation, who testified that he was unable to do so because PaveWise had attempted to use gasoline as the cleaning solvent. Specifically, the remediation specialist testified that whereas in the past he had been able to remove tar-based sealants from concrete, stone, vinyl and aluminum surfaces, PaveWise had smeared the sealing product and embedded it into the surfaces. *See* Dep. Ryan at 16-17, 26-27. Plaintiff completely ignores this aspect of the record.

The policy here excludes damage caused by faulty or inadequate "maintenance" as well as faulty "workmanship." *See* Allstate Policy at 16. Courts have held that defective cleaning is considered faulty maintenance. *See Diloreta*, 2000 WL 45994, at *4 (finding that rug cleaning falls within the definition of "maintenance" under the insurance policy and is therefore excluded); *Allegheny Design Mgmt., Inc. v. Travelers Indem. Co. of Am.*, No. 12-00658, 2013 WL 5408650, at *5 (W.D. Pa. Sep. 25, 2013), *aff'd*, 572 F. App'x 98 (3d Cir. 2014) (holding that cleaning "would qualify as a skill or technique of a workman, and [the company's] performance of its glass cleaning services is no less the product of workmanship because the level of skill perhaps differs from construction or repair."). But regardless of whether one categorizes the cleaning process as workmanship or maintenance, both Plaintiff's testimony and the testimony of his remediation specialist identify PaveWise's efforts as worsening the damage, with Plaintiff pointing to no contrary evidence in opposing the motion.[5]

### E. The Bad Faith Claim

Plaintiff also brings a claim for bad faith under 42 Pa. Cons. Stat. § 8371. To succeed on a bad faith claim, plaintiffs must show by clear and convincing evidence "that the defendant did not have a reasonable basis for denying benefits under the policy and that the defendant knew or recklessly disregarded its lack of reasonable basis for denying the claim." *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994). Here, the exclusion was properly invoked. "A reasonable basis is all that is required to defeat a claim of bad faith." *J.C. Penney Life Ins. Co.*, 393 F.3d at 367 (citing *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995)). *See also Cresswell v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 820 A.2d 172,

---

[5] Allstate further argues that the exclusion applies because Ugly Shingles provided defective cleaning in trying to remediate the damage. I give no consideration to that argument.

11

179 (Pa. Super. Ct. 2003) (stating that where the court found that the insurer did not have a duty to provide coverage, "it is impossible" to show that the insurer lacked a reasonable basis for denying coverage).

### IV. Conclusion

On this record, the faulty workmanship exclusion bars coverage as a matter of law. Plaintiff's attempt to carve out a legal exception to its applicability depends on a line of precedent irrelevant to the interpretation of this policy, and the factual distinctions Plaintiff seeks to draw are not supported by the record. Plaintiff's frustration over his inability to secure compensation from PaveWise, exacerbated by Allstate's initial evasiveness in identifying the relevant exclusion, is understandable. But the claim falls outside coverage, and there is no basis on which to find bad faith. An appropriate order follows.

       /s/ Gerald Austin McHugh
    United States District Judge